TREMONT TRUST COMPANY *vs.* SAMUEL W. TUCKER.

Middlesex.    November 19, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Replevin. Pledge. Evidence,* Competency.

At the trial of an action of replevin by a bank against a deputy sheriff to gain possession of four motor trucks, it appeared that the deputy sheriff had taken possession of the trucks by virtue of a writ of attachment in an action brought by the proprietor of a garage against a construction company for storage of the trucks, and the plaintiff introduced evidence tending to show that, previous to the attachment, the construction company had sold and delivered the trucks to the plaintiff. Subject to an exception by the plaintiff and as tending to show that the transaction between the plaintiff and the construction company was colorable only and was for the purpose of preserving the trucks from a lien of the garage proprietor, the defendant was permitted to introduce evidence to the effect that officers of the construction company and a vice-president of the plaintiff had been informed that the garage proprietor claimed a lien upon the trucks, that, upon receiving the information, the vice-president had said, "Well, I will get them out of there [the garage of the lienor]," that he thereupon caused them to be removed as his trucks, that at that time "nothing had been done as yet," that no instrument of conveyance to the bank had been made, and that an officer of the construction company had said that he did not know "just exactly how they were going to hold" the trucks, but that "they would find some legal means of holding them so that" the garage proprietor "would not get his money," and that, "sooner or later, they would cover" the lack of a bill of sale at the time by "drawing some paper and antedating it." *Held*, that the evidence was admissible.

A ruling at the trial above described, that answers of the treasurer of the plaintiff to interrogatories, which in substance stated that the trucks were turned over to the plaintiff "in pledge," and "as security," were admissible in evidence, was correct.

The judge in his charge to the jury at the trial above described stated, "The vice-president of the . . . [plaintiff], in interrogatories which were put to him and answered by him, says that it was a pledge. Now, if that is right, and it was a pledge, and you believe the plaintiff correctly described the transaction when he answered these interrogatories under oath, then you must find, as I have instructed you, against his trust company; because, if it was a pledge, the defendant . . . had a right to attach them. The transaction has been described by other witnesses put on the stand by the plaintiff . . . as a pledge." *Held,* that there was no error in the charge.

REPLEVIN to recover four motor trucks. Writ dated December 18, 1917.

In the Superior Court, the action was tried before *Chase*, J. Material evidence at the trial and exceptions saved by the plaintiff are described in the opinion. The jury found for the defendant; and the plaintiff alleged exceptions, which, after the resignation of *Chase*, J., were allowed by *Hammond*, J.

*A. Leonard*, for the plaintiff.

*F. A. Crafts*, for the defendant.

PIERCE, J. This is an action of replevin to recover four motor trucks, to which the plaintiff claims title and asserts a right to present possession as against the defendant, who as a deputy sheriff attached the trucks in an action at law by Lambert H. Farnham against the New England Fireproof Construction Company.

Before and on November 10, 1917, the trucks are admitted to have been the property of the construction company. They had been kept in storage in the public garage of Farnham, and there was a considerable bill due Farnham for such storage. On November 10 they were driven from the garage of Farnham and delivered to the plaintiff by employees of the construction company. At this time the construction company owed the plaintiff a sum of money which was secured by a construction mortgage, and also an unsecured sum of money which was lent it on November 10, 1917.

At the trial four issues were raised and presented to the jury with full and appropriate instructions: (1) was the property delivered to and received by the plaintiff with the intent that the full title should pass to the plaintiff; (2) was the property delivered to and received by the plaintiff with intent to defeat a lien which was or might be claimed by Farnham; (3) was the property delivered to and received by the plaintiff in pledge as security for the debt of the construction company to the plaintiff with the right "to sell and to credit the amount received" on the loan; and (4) was the property delivered to and received by the plaintiff as the agent of the construction company with authority to sell and apply the proceeds on the loan.

Upon the issue whether the plaintiff acquired an absolute title to the property or whether it confederated with the construction company to preserve the property in the construction company

as against a lien which Farnham claimed or might claim, the defendant was permitted to introduce the testimony of Farnham to the effect that before November 10 and on November 10 he had notified the president and treasurer and a director of the construction company that he had a lien on the trucks; he was also permitted to introduce the testimony of one Jackson to the effect that he told one Quimby, vice-president of the plaintiff bank, "that Mr. Farnham was holding the cars for a lien;" and that Quimby told him "he was going to get the trucks out" and that he "went to get the men to take them out." He also was permitted to introduce the declaration of one Luce, a director and general manager of the construction company, who died about October 26, 1918, in substance, "that Mr. Farnham had forbidden them taking the trucks out of the garage; that they, the company, owed him something like pretty near nine hundred dollars ($900), as I remember; that he and Mr. Dobbins (I think he said) went out here on a certain morning in November, and asked for the cars; and Mr. Haywood was running the repair shop at that time; and that Mr. Farnham would not let the cars go out; that he and Dobbins went over to the property which is just across a new lot from the garage; that Quimby was over there; that he told Quimby that Farnham would not let the cars out; that Quimby said in effect, 'Well, I will get them out of there;' that he went over and got them out, and himself carried them into Cambridge; he did not drive them, but they were taken from there into Cambridge as his cars. Mr. Luce said that nothing had been done as yet; but that they did certainly effectively get the things out of Mr. Farnham's possession and he wouldn't be able to hold them under a lien. He didn't know just exactly how they were going to hold them; but they would find some legal means of holding them so that Farnham would not get his money. That at that time no bill of sale or paper had been drawn or handed to Quimby at all; but that, sooner or later, they would cover that by antedating — drawing some paper and antedating it."

We think the evidence was clearly admissible upon the issue of the intent of the parties to pass title or not to pass it to the plaintiff, as distinguished from a purpose to protect the possession and title of the property in the construction company by removing that property from the possession of the lienor.

Upon the issue of pledge and agency, against the exception of the plaintiff, the judge allowed in evidence declarations and answers to interrogatories of the treasurer of the plaintiff bank and of its counsel to the effect "that the trucks were turned over as security" and that the construction company "turned over to the plaintiff in pledge the four trucks described in the plaintiff's writ, as security on account of said indebtedness."

These declarations were received and submitted to the jury in connection with all the testimony, the judge instructing the jury in this connection as follows: "The vice-president of the Tremont Trust Company, in interrogatories which were put to him and answered by him, says that it was a pledge. Now, if that is right, and it was a pledge, and you believe the plaintiff correctly described the transaction when he answered these interrogatories under oath, then you must find, as I have instructed you, against his trust company; because, if it was a pledge, the defendant, Mr. Farnham, had a right to attach them. The transaction has been described by other witnesses, put on the stand by the plaintiff, the trust company, as a pledge."

We find no error of law in the admission of evidence or in the charge.

*Exceptions overruled.*